UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 14-CR-10089-RWZ

YGOA ALMONTE-BAEZ

v.

USA

MEMORANDUM & ORDER

December 15, 2020

ZOBEL, S.D.J.

Following a jury trial, petitioner Ygoa Almonte-Baez was convicted of conspiracy to possess with intent to distribute heroin (21 U.S.C. § 846) and possession with intent to distribute heroin (21 U.S.C. § 841(a)(1)). On October 29, 2015, he was sentenced to 156 months imprisonment. His appeal to the First Circuit resulted in affirmance of the judgment of conviction in May, 2017. On August 6, 2018, petitioner moved pro se to vacate his conviction under 28 U.S.C. § 2255, claiming ineffective assistance of trial counsel in ten respects and two other constitutional errors. In response to petitioner's request, the court appointed counsel on April 3, 2019.

I.     **Background**

On July 26, 2013, law enforcement was surveilling a vehicle they believed to be involved in drug trafficking. They watched a man, later identified as petitioner's associate, Jose Medina-Lopez, leave an apartment at 24 Cedar Street in Lawrence, Massachusetts and get in the car. After officers stopped him, they found copious cash

1

in the vehicle, arrested him, and returned to Cedar Street. The landlord of the multi-unit property, Santiago Javier, brought the officers to the suspect's apartment. They knocked on the door and announced their presence. They heard someone running on the other side of the door, broke the door down, and found the petitioner attempting to escape through a boarded-up rear exit. The officers did not have a search warrant.

Petitioner's retained counsel moved to suppress all evidence obtained during the warrantless search of the apartment on the grounds that the exigent circumstances exception to the Fourth Amendment's warrant requirement did not apply here. After hearing, the court denied the motion on December 1, 2014.

At trial, the government introduced more than 20 kilograms of heroin, drug processing equipment (including a bottle of cutting agent with petitioner's fingerprint on it), drug ledgers, and phones—all found in the apartment during the search. One of those phones, which listed petitioner's parents' number as "casa" (Spanish for "house") and his sister's number in its address book, also contained texts of conversations with co-conspirators that matched entries in the ledgers.

The telephone numbers of petitioner's family were identified to the jury, in part, because he called them from pretrial detention, where calls are recorded. In those conversations, he showed knowledge of the apartment including documents in closed kitchen cabinets.

Mr. Medina-Lopez testified at trial that petitioner paid him to collect drug money and deliver it to 24 Cedar Street, where Mr. Almonte-Baez would log the transaction in

his notebooks. He said that on July 26 he went there to pick up cash and convey it to petitioner's associates.

The jury convicted petitioner on both counts of the indictment. He now claims that his trial counsel failed to provide adequate representation both before and during the trial, in that he:[1]

- Ground One: elicited testimony at trial regarding petitioner's exercise of the Fifth Amendment right to remain silent and then neglected to move to strike or request a limiting jury instruction;
- Ground Two: failed to request a limiting instruction regarding petitioner's detention after witnesses from the Essex County Sherriff's Department authenticated his phone logs, a recorded call, and a handwriting example;
- Ground Three: did not present good character evidence;
- Ground Four: waived an evidentiary hearing on the motion to suppress;
- Ground Six: declined to renew the motion to suppress at trial;
- Ground Seven: did not conduct adequate investigation of neighbors at 24 Cedar Street[2] or present Mr. Almonte-Baez's explanation that drug-dealing texts were on petitioner's phone because Mr. Medina-Lopez confused it with his own;
- Ground Eight: stipulated to the reports of government fingerprint and handwriting experts;

---

[1] I reorganize the arguments but keep petitioner's original numbering.
[2] Petitioner also argues counsel failed to speak to the "potential girlfriend" who dropped him off at the apartment, but later concedes this claim is not adequately developed.

3

- Ground Nine: failed to object and move to strike a portion of an agent's testimony regarding the agent's belief that petitioner's belongings were outside of the scope of the warrant because petitioner deems this a legal conclusion;
- Ground Ten: did not obtain cell data that would have contradicted witnesses; and
- Ground Twelve: declined to move to suppress out-of-court and in-court identification of government's witness.

Petitioner also argues:

- Ground Five: the trial court erred in not holding a full evidentiary hearing on the motion to suppress; and
- Ground Eleven: the government denied him a fair trial under the due process clause of the Fourteenth Amendment, U.S. Const. amend. XIV § 1, and Arizona v. Youngblood, 488 U.S. 51 (1988), because it failed to seize from the apartment and preserve petitioner's luggage and other belongings.

II.  **Discussion**

   a. **Evidentiary Hearing**

An evidentiary hearing on a § 2255 motion is not necessary when the motion "(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974). "Moreover, when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v.

4

McGill, 11 F.3d 223, 225 (1st Cir. 1993). No hearing is required, as the files and records of the case conclusively refute petitioner's claims.

### b. Ineffective Assistance Claims

<u>Legal Standards</u>

To prove denial of his Sixth Amendment right to effective assistance of counsel, petitioner bears a "heavy burden of proof." Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996). It requires (1) deficient performance by counsel, and (2) resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). Under the first prong, petitioner must show that "counsel's representation fell below an objective standard of reasonableness," judged by reference to "prevailing professional norms" and "viewed as of the time of counsel's conduct." Id. at 688–90. Under the second prong, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "[A] reviewing court need not address both requirements if the evidence as to either is lacking." Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007).

<u>Various Strategic Decisions (Grounds Three through Ten)</u>

In assessing counsel's effectiveness "[w]here strategic choices are involved, reviewing courts must be careful not to lean too heavily on hindsight. Rather, the court must apply 'a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance.'" Janosky v. St. Amand, 594 F.3d 39, 48 (1st Cir. 2010) (quoting Strickland, 466 U.S. at 689). The question is whether "under the circumstances, the challenged action *might* be considered sound trial strategy." Strickland at 689 (emphasis added).

5

Petitioner's assertions that counsel failed to adequately investigate or present certain helpful evidence (<u>grounds three, seven, and ten</u>) are unpersuasive. Trial counsel "'has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' But this duty does not invariably require a lawyer, at all times and under all circumstances, to probe every evidentiary lead." <u>Id.</u> at 49 (quoting <u>Strickland</u>, 466 U.S. at 691). "Defense counsel is allowed to make strategic decisions, within the wide bounds of professional competence, as to which leads to follow up, and on which areas to focus his energies. This is especially true during trial, when time is short." <u>Phoenix v. Matesanz</u>, 233 F.3d 77, 84 (1st Cir. 2000). Counsel's choices not to investigate character witnesses, other witnesses at 24 Cedar Street, or cell side data and not to present to the jury character evidence or petitioner's explanation for the drug-dealing texts on his phone are just such strategic decisions. They are particularly reasonable because none of that evidence would have been particularly compelling to the jury. Character witnesses would not have changed the facts of the case. Some neighbors or visitors at 24 Cedar Street may not have seen petitioner, but many people do not know the comings and goings of their neighbors. Cell phones can be swapped, so even if the cell site data of this phone showed he had not been in the Lawrence area, it would not have been dispositive. And petitioner's suggested defense regarding the incriminating texts in his phone (that the other drug dealer confused their two phones) is implausible.

Counsel's other strategic decisions were also constitutionally adequate. His waiver of an evidentiary hearing on the motion to suppress (<u>ground four</u>) was reasonable when he believed he had robust ground to challenge the search on the

government's facts. Counsel's choice not to renew the motion to suppress (ground six) made sense: first, there is no requirement to renew a motion to suppress and, second, the opportunity remained to appeal the court's ruling. His stipulations to fingerprint and handwriting reports (ground eight) were not unreasonable, as the evidence was clearly admissible. Similarly, his failure to object to the agent's purported legal conclusion that petitioner's possessions were outside the scope of the warrant (ground nine) was not ineffective because it is unclear if the grounds for objection are even correct.

The In-Court Identification (Ground Twelve)

The landlord, Javier Santiago, recounted at trial the comings and goings to and from the apartment of Mr. Medina-Lopez and a second man. The government asked him if he could identify the second man in the court room. Although petitioner was, of course, in the courtroom, Mr. Javier failed to identify anyone. The government then showed the witness petitioner's driver's license photo, which the witness identified as featuring that second man. Counsel did not move to suppress this dubiously reliable identification.

Even were the suppression claim meritorious, however, petitioner cannot show prejudice. The jury watched in real time as the witness repeatedly failed to identify petitioner and was only later able to recognize him on a photograph. Defense counsel crossed the witness on these defects and the jury was able to see exactly how flimsy the identification was. It was of little probative value and, therefore, its absence would not have changed the trial's outcome.

Counsel's Failure to Request Limiting Instructions (Grounds One and Two)

Petitioner argues that counsel should have requested a limiting instruction regarding invocation of the right to remain silent (ground one). The reference to Mr. Almonte-Baez's Miranda invocation was passing and the agent's memory of it was imprecise. A reasonable attorney could have decided a jury instruction would likely draw additional attention to evidence he would prefer not to highlight to a jury. The choice was thus reasonable. See Neverson v. Bissonnette, 242 F. Supp. 2d 78, 92 (D. Mass. 2003), aff'd on other grounds sub nom. Neverson v. Farquharson, 366 F.3d 32 (1st Cir. 2004) (arguing counsel could have decided cross examination is preferable to drawing undue attention via a motion to strike and characterizing these choices as strategic decisions).

Petitioner also argues counsel should have requested a limiting instruction regarding the evidence of his incarceration (ground two). Unlike the passing reference to Mr. Almonte-Baez's invoking his Miranda rights, petitioner's incarceration was more conspicuous at trial. Nevertheless, a reasonable attorney may still have decided against drawing attention to the fact through a limiting instruction or motion to strike.

Regardless of whether counsel erred, however, petitioner again cannot show he was prejudiced by this or any other error. The evidence against petitioner was strong. Messages on his phone matched the transactions enumerated in the drug ledger. His fingerprint was found on a bottle of cutting agent. His associate, Mr. Medina-Lopez testified against him. And petitioner himself described the hidden contents of the apartment on the phone from jail, which undermines his defense that he was a mere overnight guest.

### c. Due Process Claim

Petitioner claims the government's failure to seize his luggage and other possessions in its search of the apartment violated the due process clause (ground eleven).[3] Except for ineffective assistance claims, see Massaro v. U.S., 538 U.S. 500, 504 (2003), constitutional claims that were not raised on direct review cannot be raised on collateral review unless plaintiff shows cause for the waiver and actual prejudice, or that he is actually innocent. Bousley v. U.S., 523 U.S. 614, 622 (1998). Petitioner makes no innocence claim, nor a showing of cause or actual prejudice.

### III. Conclusion

Petitioner's § 2255 motion to vacate (Docket # 137) is DENIED. Accordingly, his motion for leave to retain experts (Docket # 138) and motion to expand the record (Docket # 151) are also DENIED.

Counsel's conduct, although reasonable in my view, may be seen through other eyes as inadequate. A certificate of appealability is hereby issued.

_December 15, 2020_
DATE

_/s/ Rya W. Zobel_
RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE

---

[3] In his reply, petitioner tries to refashion this argument under the Sixth Amendment, claiming counsel should have asked for a negative inference instruction due to missing evidence. As with the jury instructions discussed above, this could be construed as a trial strategy and therefore would not be deficient.